Mel C. Orchard, III
Noah W. Drew
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290 / (307) 733-5248 (fax)
orchard@spencelawyers.com
drew@spencelawyers.com

*Attorneys for the Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL SAWYER, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>EOG RESOURCES, INC., a Delaware Corporation; JOHN DOE PIPE INSPECTION COMPANY, real name/s unknown; JOHN DOE COMPANY MAN, real name unknown; and JOHN DOES, individual or corporate entity 1 through 5<br><br>    Defendants. | **COMPLAINT AND DEMAND FOR A JURY TRIAL** |

## I.    PARTIES

**PLAINTIFF**

1.    Michael Sawyer is a resident of Wyoming, residing in Sweetwater County, Wyoming.

**DEFENDANT EOG RESOURCES, INC.**

2.    Defendant EOG Resources, Inc. ("EOG") is a Delaware Corporation with its principal place of business in Houston, Texas.

3. EOG maintains a registered agent identified as CT Corporation System, 120 W Sweet Ave., Bismarck, ND 58504-5566.

4. At all relevant times, EOG owned a well site within Montrail County, North Dakota known as Van Hook 78-15H ("Van Hook" or "the Van Hook site") upon which Michael Sawyer worked.

5. At all relevant times, EOG leased and operated the Van Hook site upon which Michael Sawyer worked.

6. As owner and operator of the Van Hook site, EOG retained the right to direct the manner of performance of the work and safety at Van Hook 78-15H in Montrail County, North Dakota.

7. As owner and operator of the Van Hook site, EOG assumed affirmative duties with respect to safety at the well site in question in Montrail County, North Dakota.

8. As a corporation, EOG can act only through its agents, including its employees, officers, directors, members and managers.

9. EOG is vicariously liable for its agents' acts and omissions within the course and scope of their employment and/or agency.

**JOHN DOE PIPE INSPECTORS**

10. On information and belief, EOG hired either an individual and/or a corporate entity to inspect the pipe it owned and operated at the Van Hook site.

11. The real names and identities of this individual or entity is currently unknown to Michael Sawyer.

12. The duties of this individual and/or entity were to ensure the pipe was structurally sound and safe for use at the Van Hook site.

COMPLAINT AND DEMAND FOR JURY TRIAL — 2

13. On information and belief, the John Doe Pipe Inspectors retained the right to direct the manner of performance of the work and safety at Van Hook 78-15H in Montrail County, North Dakota.

14. On information and belief, the John Doe Pipe inspectors assumed affirmative duties with respect to safety at the well site in question in Montrail County, North Dakota.

15. As a corporate entity, the John Doe Pipe Inspectors can act only through its agents, including its employees, officers, directors, members and managers.

16. The John Doe Pipe Inspectors are vicariously liable for its agents' acts and omissions within the course and scope of their employment and/or agency.

17. On information and belief, the John Doe Pipe Inspectors were responsible for the acts or admissions that caused Michael Sawyer's injuries. Despite Michael Sawyer's best efforts, he has been unable to discover the true identity of John Doe Pipe Inspector. Michael Sawyer reserves the right to amend his Complaint to add the true names of these fictitiously named John Does if and when Michael Sawyer discovers their identities.

**JOHN DOE COMPANY MAN**

18. On information and belief, EOG hired either an individual or a corporate entity to act as a "Company Man" at the Van Hook site.

19. The real names and identities of this individual or entity are currently unknown to Michael Sawyer.

20. The duties of this individual and/or entity were to control the speed and manner of work at the Van Hook site.

21. The John Doe Company retained the right to direct the manner of performance of the work and safety at Van Hook 78-15H in Montrail County, North Dakota.

22. The John Doe Pipe Company Man assumed affirmative duties with respect to safety at the well site in question in Montrail County, North Dakota.

23. As a corporate entity, the John Doe Company Man can act only through its agents, including its employees, officers, directors, members and managers.

24. The John Doe Company Man is vicariously liable for its agents' acts and omissions within the course and scope of their employment and/or agency.

25. On information and belief, the John Doe Company man was responsible for the acts or admissions that caused Michael Sawyer's injuries. Despite Michael Sawyer's best efforts, he has been unable to discover the true identity of John Doe Company Man. Michael Sawyer reserves the right to amend his Complaint to add the true names of these fictitiously named John Does if and when Michael Sawyer discovers their identities.

## II.     JURISDICTION AND VENUE

26. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

27. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts and omissions giving rise to Michael Sawyer's claims occurred in North Dakota.

28. This action is properly brought in the Western Division of this Court pursuant to D.N.D. Gen. L.R. 1.1 and D.N.D. Civ. L.R. 3.1(A) because the acts and omissions giving rise to Michael Sawyer's claims occurred in Mountrail County, North Dakota.

29. This Court has personal jurisdiction over Defendants because Defendants committed the acts and omissions alleged in this Complaint in North Dakota. Separately, this

Court has personal jurisdiction over Defendants because of Defendants' extensive contacts with North Dakota.

### III. FACTS COMMON TO ALL CAUSES OF ACTION

30. At all relevant times, Michael Sawyer worked for Mountain States Pressure Services, Inc. ("MSPSI").

31. Sometime prior to May 5, 2017, EOG hired MSPSI to perform "work over" operations at the Van Hook site.

32. On May 5, 2017, Michael Sawyer worked as a "rig hand" for MSPSI at EOG's Van Hook site.

33. On May 5, 2017, Michael Sawyer and his employer, MSPSI, involved in the work-over operation at EOG's Van Hook well, were under the direction and supervision of an on-site company man who was an employee of EOG.

34. On May 5, 2017, Michael Sawyer and his employer, MSPSI, involved in the work-over operation at EOG's Van Hook well, were under the direction and supervision of an on-site company man who was an agent of EOG.

35. On May 5, 2017, Michael Sawyer and his coworkers were involved in the work-over operation at EOG's Van Hook well, were under the direction and supervision of an on-site company man who was employee of John Doe Company Man.

36. The company man was the wellsite supervisor for EOG at the Van Hook site.

37. The company man was responsible for the safe operation of the work-over project, including the safety of all personnel at the wellsite location.

38. At all relevant times, EOG – through its employees, agents, and/or the company man - identified and directed that 3 ½ inch production pipe was to be used by Michael Sawyer and/or MSPSI for work operations at the Van Hook site.

39. At all relevant times, John Doe Company Man, identified and directed that 3 ½" production pipe was to be used by Michael Sawyer and/or his MSPSI for work operations at the Van Hook site.

40. At all relevant times, the 3½ inch production pipe that was being used for the well was owned by EOG.

41. At all relevant times, the 3½ inch production pipe that was being used for the well was controlled and operated by EOG.

42. As the owner and operator of the 3 ½ inch production pipe, EOG was responsible for the pipe's structural integrity and to make sure it was safe for use by Michael Sawyer and/or other rig workers at the Van Hook site.

43. At all relevant times, an EOG employee or agent was responsible for inspecting the pipe to ensure it was safe from defects and safe for use by Michael Sawyer and/or his co-workers.

44. At all relevant times, employee or agent of John Doe Pipe Inspectors was responsible for inspecting the pipe to ensure it was safe from defects and safe for use by Michael Sawyer and/or his co-workers.

45. At all relevant times, an employee or agent of John Doe Company was responsible for inspecting the pipe to ensure it was safe from defects and safe for use by Michael Sawyer and/or his co-workers.

46. At all relevant times, it was not Michael Sawyer's responsibility to inspect the 3 ½" production pipe owned and operated by EOG.

47. At all relevant times, it was not MSPSI's responsibility to inspect the 3 ½" production pipe owned and operated by EOG.

48. At all relevant times, EOG – through its employees, agents, and/or the company man - directed Michael Sawyer and/or MSPSI to use a Weatherford Oil Country Manufacturing 3 ½" Center-Latch Tubing Elevator Model CL-100 ("the elevator") at the Van Hook site.

49. At all relevant times, John Doe Company Man directed Michael Sawyer and/or his MSPSI to use a Weatherford Oil Country Manufacturing 3 ½" Center-Latch Tubing Elevator Model CL-100 ("the elevator") at the Van Hook site.



*Figure 1 - Weatherford Oil Country Manufacturing Center-Latch Tubing Elevator Model CL-100*

50. The purpose of the elevator is to lift production pipe in and out of the well boar.

51. It was well known to EOG, John Doe Company Man, and/or John Doe Pipe Inspectors prior to May 5, 2017, that defects and/or structural irregularities in 3½ inch production piping could cause the elevator to fail and release the pipe.

52. At all relevant times, EOG – through its employees, agents, and/or the company man – directed Michael Sawyer and/or MSPSI to use a 10 lbs. to 20 lbs. by 8" to 12" long solid steel cylinder as internal drift diameter gauge (colloquially known as a "rabbit" and herein after referred to as the "rabbit") for work operations at the Van Hook site.

53. At all relevant times, John Doe Company Man directed Michael Sawyer and/or MSPSI to the rabbit for work operations at the Van Hook site.

54. The purpose of the rabbit was ensure minimum-diameter specifications were within tolerance for the EOG 3 ½" production pipe and to clear junk, dried cement, dirt, rocks or other debris from inside the pipe.

55. At all relevant times, Michael Sawyer, his fellow employees, and/or other contractors complained to EOG and/or John Doe Company Man regarding the safety of the rabbit in question.

56. EOG and/or the John Doe Company refused to use a different rabbit despite the safety concerns of Michael Sawyer and other rig hands and compelled them to continue work.

57. Upon information and belief, on May 5, 2017, EOG – through its employees, agents and/or company man – explicitly and implicitly directed and required Michael Sawyer and/or MSPSI to rush the work-over operation.

58. Upon information and belief, on May 5, 2017, John Doe Company Man explicitly and implicitly directed and required Michael Sawyer and/or MSPSI to rush the work-over operation.

59. On May 5, 2017, EOG – through its employees, agents, and/or the company man – knew that rushing the work performed by Michael Sawyer and/or other rig hands on May 5, 2017, increased the danger at the Van Hook site.

60. On May 5, 2017, John Doe Company Man knew that rushing the work performed by Michael Sawyer and/or other rig hands on May 5, 2017, increased the danger at the Van Hook site.

61. On May 5, 2017, at approximately 11:00 p.m. Michael Sawyer was operating the elevator to lift EOG's tubing onto the derrick to be tripped back into the well.

62. At approximately 11:00 p.m. on May 5, 2017, Michael Sawyer attached the elevator to a piece of EOG 3½ inch production pipe that contained a defect (a raised weld) that was hidden to him.

63. The raised weld present on the EOG 3½ inch production pipe was not discoverable to Michael Sawyer with reasonable due diligence.

64. Defendants knew or should have known of the defect and/or raised weld that existed on the EOG 3½ inch production pipe.

65. When Michael Sawyer latched the elevator to the EOG 3½ inch production pipe, it created a false latch that was unknown and undiscoverable to him.

66. On May 5, 2017 at approximately 11:00 p.m., Michael Sawyer and/or his fellow employees used the rabbit provided by EOG and/or John Doe Company Man to check the internal diameter and clear any obstructions in each pipe.

67. At all relevant times, Defendants knew or should have known that the rabbit Michael Sawyer and/or MSPSI was unfit for the job being preformed and resulted in the pipe improperly jarring, bouncing, and/or vibrating as it traveled through the 3½ inch production pipe.

68. On May 5, 2017, at approximately 11:00 p.m., as the elevator was lifting the faulty EOG 3½ inch production pipe in question and as the rabbit was fed through the pipe, the elevator latch released.

69. When the elevator latch released, the EOG 3½ inch production pipe – weighing approximately 300 pounds – fell and struck Michael Sawyer in his right shoulder, neck, and head.

70. Defendants EOG, John Doe Pipe Inspectors, and John Doe Company Man, hid or otherwise failed to inform Michael Sawyer of the faulty EOG 3½ inch production pipe.

71. Defendants EOG, John Doe Pipe Inspectors, and John Doe Company Man, failed to warn Michael Sawyer of the potential dangers of using the rabbit in question with the faulty EOG 3½ inch production pipe.

72. As a result of the Defendants' acts and omissions, Michael Sawyer, MSPSI and all other contractors at the Van Hook site were placed in extreme danger.

73. As a result of the Defendants' actions, Michael Sawyer suffered severe, permanent and irreversible physical, mental and economic injuries. Michael Sawyer's injuries are more particularly set forth below in the section of this Complaint entitled "Damages".

IV. **CAUSE OF ACTION — NEGLIGENCE AGAINST EOG, JOHN DOE PIPE INSPECTORS, AND JOHN DOE COMPANY MAN**

74. Michael Sawyer incorporates by reference all allegations contained in this Complaint.

75. At the time and place of the events described here in, EOG, John Doe Pipe Inspectors, and John Doe Company man owed a general duty of reasonable care to Michael Sawyer

76. At the time and place of the events described herein, EOG, John Doe Pipe Inspectors, and John Doe Company Man retained control over the manner and method of work and therefore owed a duty of reasonable care to Michael Sawyer.

77. At the time and place of the events described herein, EOG, John Doe Pipe Inspectors, and John Doe Company Man assumed affirmative safety duties over the manner and method of work and therefore owed a duty of reasonable care to Michael Sawyer.

78. EOG owed a duty to provide Michael Sawyer a work environment safe from hazards, including but not limited to, hidden dangers associated with improperly implementing a safe workflow and/or speed, hidden dangers associated with using the faulty EOG 3 ½ inch production pipe and an improper steel rabbit for the equipment being used.

79. John Doe Pipe Inspectors owed a duty to provide Michael Sawyer a work environment safe from hazards, including but not limited to, hidden dangers associated with using the faulty EOG 3 ½ inch production pipe.

80. John Doe Company Man owed a duty to provide Michael Sawyer a work environment safe from hazards, including but not limited to, improper and unsafe work flow and/or speed, hidden dangers associated with using the faulty EOG 3 ½ inch production pipe and an improper steel rabbit for the equipment being used.

81. The danger created by Defendants' conduct in discharging its duties at the Van Hook well site was foreseeable, and Defendants' decision to ignore the danger constituted a deviation from the standard of care an ordinary person would use in such circumstances.

82. Defendants breached their duty of care through acts and omissions including, but not limited to, the following:

    a. Failure to exercise reasonable care under all of the circumstances;

    b. Failure to provide and maintain a safe work environment;

    c. Failure to use and maintain equipment to allow safe operations by contractors/subcontractors and their employees;

    d.  Failure to properly warn and guard against the dangers of using defective equipment;

    e.  Failure to initiate, employ, and enforce safety procedures to ensure a safe work environment;

    f.  Failure to abide by state and federal rules and regulations and permits;

    g.  Failure to enforce and abide with company polices that were in effect and controlling at the time of this incident;

    h.  Negligently performed or failed to perform affirmative duties they assumed concerning the safety of the job site;

    i.  Failure to meet the standards of care requisite in the industry;

    j.  Failure to safely and properly hire, train, and supervise employees, agents, and/or independent contractors; and

    k.  Retention of unsuitable employees, agents, and/or independent contractors;

    l.  Failure to listen to, or take action on, or otherwise ignored complaints of their own employees or employees of contractors/subcontractors the dangers associated with the work site;

    m.  Through the acts and omissions of its employees or agents, placing the lives and physical safety of others in immediate danger of harm.

83.    The defendants acted with disregard of the consequences and under the circumstances and conditions where a reasonable person would know that such conduct would, in a high degree of probability result in harm to another.

84.    As a direct and proximate result of the Defendants' acts and omissions, Michael Sawyer sustained personal injuries and economic losses and suffered the damages as more particularly set forth below in the section of this Complaint titled "Damages."

## VI.   DAMAGES

85.    Michael Sawyer incorporates by reference all allegations contained in this Complaint.

86. As a direct and proximate result of Defendants' negligent acts and omissions set forth herein, Michael Sawyer sustained the following damages:

    a. Past and future physical pain and suffering in an amount to be proven at trial, including but not limited to:

        i. Blunt force trauma to Michael Sawyer's head;

        ii. Blunt force trauma to Michael Sawyer's neck resulting in trauma to his cervical spine;

        iii. Surgery as a result of cervical spine trauma consisting of cervical arthrodesis by anterior approach technique, C4-5 and C5-6 with interbody fusion and iliac crest autograft;

        iv. Blunt force trauma to Michael Sawyer's right shoulder severely damaging his brachial plexus nerve resulting in full paralyses to his right arm;

        v. Surgery to his right arm including nerve graft/transfers and fusion of his right wrist; and

        vi. Other grievous pain and suffering.

    b. Past and future emotional pain and suffering in an amount to be proven at trial;

    c. Past and future loss of enjoyment of life in an amount to be proven at trial;

    d. Past and future inconvenience in an amount to be proven at trial;

    e. Past and future disability/disfigurement in an amount to be proven at trial;

    f. Past and future loss of earnings, loss of earning capacity, and loss of income in an amount to be proven at trial;

    g. Past and future pecuniary loss in an amount to be proven at trial;

    h. Past and future medical care, rehabilitation services, and related expenses in an amount to be proven at trial;

    i. All allowable costs, expenses, and fees associated with this litigation.

WHEREFORE, Michael Sawyer prays that the Court enter judgment against Defendants as follows:

I. Judgment against Defendants for economic damages in an amount consistent with the allegations contained herein and to be proven at trial;

II. Judgment against Defendants for non-economic damages in a reasonable sum but not less than seventy-five thousand dollars; and

III. Judgment for costs, interest, and such other and further relief as the Court deems just and equitable.

DATED this 3rd day of September, 2019.

THE SPENCE LAW FIRM, LLC

Mel C. Orchard, III
Noah W. Drew
PO Box 548
15 South Jackson Street
Jackson, WY 83001
307-733-7290
drew@spencelawyers.com

*Attorneys for the Michael Sawyer*

**DEMAND FOR JURY TRIAL**

Michael Sawyer, by and through counsel, and pursuant to F.R.C.P. 38, requests this matter be tried to a jury.

DATED this **3rd** day of September, 2019.

_(signature)_

Mel C. Orchard
Noah W. Drew
THE SPENCE LAW FIRM, LLC
PO Box 548
15 South Jackson Street
Jackson, WY 83001
307-733-7290
drew@spencelawyers.com

*Attorneys for the Michael Sawyer*